SO ORDERED: February 10, 2017.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRETT OLIVER BULMER | ) | CASE NO. 15-3116-RLM-7A |
| | ) | |
|    Debtor | ) | |
| _____ | ) | |
| | ) | |
| PAUL D. GRESK, Chapter 7 Trustee | ) | |
| | ) | |
|    Plaintiff | ) | Adversary Proceeding |
| | ) | No. 15-50153 |
|    Vs. | ) | |
| | ) | |
| CRYSTAL L. BULMER and | ) | |
| BRETT OLIVER BULMER | ) | |
| | ) | |
|    Defendants | ) | |
| _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON ALL COUNTS OF PLAINTIFF'S AMENDED COMPLAINT**

    This matter came before the court on December 15, 2016 for trial on the chapter 7 trustee's amended complaint to avoid certain transfers of real estate as constructively

1

fraudulent under 11 U.S.C. §548(a)(2)(A), to sell property recovered by the estate under 11.U.S.C. §363 and to deny the Debtor's discharge under 11 U.S.C. §727.  The Court now makes its findings of fact and conclusions of law with respect to all Counts of the Amended Complaint in accordance with Fed. R. Bank. P. 7052.

## *Findings of Fact as to All Counts*

The Defendant, Crystal L. Bulmer ("Crystal") and the Debtor and Co-Defendant, Brett Oliver Bulmer ("Debtor") were married.  As of April 1998, the Debtor owned property located at 7190 South, 700 East and 6815 East U.S. Highway 52, both in Rushville with his parents as joint tenants with rights of survivorship.  In April 1998, the Debtor and his parents deeded that property to the Debtor and Crystal which they held as tenants by the entireties.

Between 1998 and 2009, Crystal and the Debtor acquired four (4) more properties in or near Rushville from unrelated parties and held those parcels as tenants by the entireties.  In addition, the Debtor owned property located at 27049 West Chapel Road and Debtor owned the remainder interest after his father's life estate in property located at 14012 Middle Street and 7331 East. U.S. Highway 52, all in Rushville.  Thus, as of early 2013, the Debtor held interests in nine (9) properties: the 6 parcels jointly owned by him and Crystal, the one parcel owned by him individually, and the two remainder interests in the parcels in which his father, Harold, retained a life estate.

During the marriage, both the Debtor and Crystal borrowed money for their respective businesses.  The Debtor borrowed $56,000 to start a saw mill / logging business.  There was no evidence presented that Crystal guaranteed the saw mill loan but she did eventually pay it off.  Crystal borrowed $102,000 for her school bus business and the Debtor was liable on that loan.  Finally, the Debtor also had a contract with Pioneer Seed to de-tassel corn which paid between $25,000 and $30,000 a year.

By early 2013, the Debtor's drug habit had cost him both his logging business and his Pioneer Seed contract.  Crystal estimated that the Debtor dissipated as much as $150,000 in marital assets during the course of the marriage because of his drug habit, and in one three-month period alone, "burned through" $69,000.  Crystal was grossing between $150,000 and $175,000 a year from her school bus business.

On August 10, 2013 Crystal moved out of the marital residence she shared with the Debtor and decided to file for divorce. By that point, the Debtor had been sued by a third party and Crystal knew the Debtor was "going to court". On September 6, 2013, the Debtor quit claimed his interests to Crystal in the six properties they jointly owned and the one parcel that the Debtor owned alone. Also on September 6, 2013, the Debtor and his father quit claimed to Crystal their interests in their two parcels, but Harold continued to retain his life estate in these parcels. As of the date of these transfers, Crystal had already been paying all of the household bills, including the mortgages, taxes and maintenance costs on the properties, since early 2013 and was caring for Harold who had become ill. The quit claim deeds on the properties were recorded between September 12th and 16th of 2013. The creditor who sued the Debtor obtained a judgment against him for over $40,000 on September 17, 2013. Crystal did not move back into the marital residence and she filed for divorce on September 23, 2013, after the transfers were completed.

The Debtor was not represented by counsel in the divorce. He was properly served with the summons but he did not appear at the final hearing. The final hearing lasted about half an hour during which Crystal gave testimony. On February 20, 2014, the Rush County Circuit Court entered its Decree of Dissolution of Marriage. By that point, Crystal and the Debtor had been living apart for several months, and had separate bank accounts. The decree contained little detail. The Debtor was awarded all accounts in his name, two vehicles, and any business interests he owned. He was also ordered to pay $500 to Crystal to reimburse her for an overdraft he caused and which she paid on a joint bank account. Crystal was awarded all accounts in her name, one vehicle and any businesses she owned as well as "all real property owned by the parties including the property located at 7190 S 700 E, Rushville, IN 46173, and any other real estate in [Crystal's] name alone. [Crystal] shall be responsible for all costs associated with said real property including, but not limited, to mortgage, insurance, taxes and shall hold [the Debtor] harmless thereon." Before the divorce was filed, all the parties' real estate had been transferred to Crystal so the divorce decree did not effect a transfer of any property. The decree also provided that Crystal "shall be responsible for payment of approximately

3

$240,000 in marital debt and shall receive the bulk of the assets". Crystal estimated that, since the divorce, she's paid between $125,000 and $145,000 in marital debt.

The Debtor filed a chapter 7 case on July 14, 2014 ("the prior case"). The Debtor indicated in his schedules that he owned no real property and did not disclose the transfer of his interest in the 9 properties to Crystal despite those transfers having occurred less than a year before. The Debtor was incarcerated by the time his §341 meeting was to be held and the chapter 7 trustee attempted to hold the meeting telephonically without success. The prior case was dismissed on the Chapter 7 trustee's motion because the Debtor failed to appear at his §341 meeting for creditors and failed to provide bank documents and tax returns to the trustee. The Debtor filed a second chapter 7 case (the "current case") on April 15, 2015. Paul Gresk was appointed chapter 7 trustee. Again, Debtor indicated that he owned no property and failed to disclose the transfers, even though he had transferred his interest in the properties less than two years before he filed the current case. He signed his bankruptcy papers and declared the information in them to be true and correct under penalty of perjury. The Debtor attended his §341 meeting and testified that he had reviewed his bankruptcy papers before he signed them and that no changes needed to be made. Upon questioning by the trustee, the Debtor testified that he did not currently own real estate but had before the divorce and that he got nothing from the divorce. He was asked by the trustee if he transferred anything of value in the last four years, other than that which was transferred in the divorce, and he at first responded no, then responded that he had transferred one piece of real estate. The trustee now seeks to deny the Debtor his discharge under §727(a)(4) and (a)(7). On June 29, 2015 Gresk filed his complaint which is the subject of this adversary proceeding.

## CONCLUSIONS OF LAW AS TO COUNTS I AND II

Counts I and II of the Trustee's amended complaint seeks to avoid the property transfers under 11 U.S.C. § 548(a)(1)(B). That section allows a trustee to avoid a constructively fraudulent transfer of a Debtor's interest in property that was made within two (2) years before the date of the filing of the petition as long as (1) the Debtor voluntarily or involuntarily received less than reasonably equivalent value in exchange for such transfer and (2) was either insolvent on the date of the transfer or became

4

insolvent as a result of such transfer.  There is no dispute that the Debtor made a transfer of his property and the transfer was made within the two-year period.  There is no dispute the Debtor was either insolvent when the transfers were made or he became insolvent as a result of the transfers.  The issues the parties have focused on are whether the properties transferred would have otherwise been available for distribution to the Debtor's creditors and whether the Debtor received reasonably equivalent value in exchange for the transfers.

### *Property of the Estate*

Crystal argues that the transfers were not fraudulent because, even if the transfers were avoided, the property still would not be property of the estate because the properties were awarded to Crystal in the divorce and the intervening event and force of the decree "wipes clean" the transfers.  Unlike many of the cases cited by Crystal in her brief, the decree did not give rise to the transfers; the transfers occurred six months before the decree and before Crystal filed for divorce.  The divorce proceedings and the decree are temporally unrelated to the transfers.  What the decree did was to merely award the parties property that they already held in their respective names, thereby having the effect of ratifying the transfers and formalizing the financial arrangement under which Crystal and the Debtor had been operating since early 2013.  But the decree itself did not give rise to any of the transfers. [1]  The operative time frame in which a fraudulent transfer is

---

[1] Trustees have challenged transfers of property that arise via divorce decree under §548, with varying results.  One line of cases holds that, as long as the division of property under the decree was within the range of likely distribution under a contested divorce proceeding, any transfers provided for in the decree cannot be attacked as fraudulent transfers under §548. *In re Sorlucco*, 68 B.R. 748 (Bankr. D. N. H. 1986). Another line of cases holds that a state court's dissolution judgment, following a regularly conducted proceeding, conclusively establishes "reasonable equivalent value" for the purpose of § 548, in the absence of actual fraud or collusion. *In re Bledsoe*, 569 F.3d 1106, 1108 (9th Cir. 2009).  This line of cases draws heavily on the rationale set forth in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 533 (1994). (amount received for property in a regularly conducted, non-collusive state court foreclosure proceeding is deemed "reasonably equivalent value" for §548 purposes.)  Yet another line of cases limits the application of BFP to foreclosures and instead conducts an in depth review of the divorce court's division of assets and the parties' respective rights under state dissolution law. *In re Fordu*, 201 F.3d 693, 709 (6th Cir. 1999).  Most courts agree that a state court judgment or decree has no preclusive effect upon the trustee because the trustee was not a party or in privity with a party to the divorce proceeding and the divorce proceeding involved the division of assets and liabilities without regard to a determination of "reasonably equivalent value". *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003).   The divorce decree here did not give rise to the transfers, and therefore, these cases are not determinative of whether the Debtor here received "reasonably equivalent value".

viewed is when the transfer was made which, here, would be September 6, 2013, the date the quit claim deeds were executed, or at the latest, when they were recorded, between September 13th and 16th, 2013.

Section 541 defines "property of the estate" as all "interests of the debtor in property". Section 548(a)(1) allows avoidance of transfers "of an interest of the debtor in property". By incorporating the language of §541 to define what property a trustee may recover under §548, it is clear that the recoverable property is that property which would have been "property of the estate" prior to the transfer in question. *In re French*, 440 F.3d 145, 151 (4th Cir. 2006). Thus, the trustee may avoid a transfer only where the transfer was of an interest of the debtor in property that would have been part of the estate had it not been transferred:

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors— "property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor."

*Begier v. Internal Revenue Service,* 496 U.S. 53, 58-59 (1990) (determining that payment of trust fund tax to the IRS could not be avoided as a preference under §547 because the transfers were not of "property of the debtor" but were instead transfers of property held in trust). The Supreme Court further added that "if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated". *Id.* at 58

Section 541(a)(1) defines "property of the estate" broadly, to include "all legal or equitable interests of the debtor in property as of the commencement of the case". This section defines "property of the estate" but the nature and extent of a debtor's interest in property is defined by state law*. Matter of Jones,* 768 F.2d 923, 927 (7th Cir. 1985); *Leibowitz v. Bowman International, Inc.*, 2016 WL 6804580 (Case No. 15C3021, N. D. Ill. November 17, 2016). Under Indiana law, "real property held as tenants by the entireties

is not subject to sale or execution or other legal process sought by any creditor to whom only one of the two marital parties is liable". *In re Rodriguez*, 402 B.R. 299, 306 (Bankr. N. D. Ind. 2009). As of the date of the transfers, six of the properties were held by the Debtor and Crystal as tenants by the entireties. [2] Only creditors who held claims upon which the Debtor and Crystal were jointly liable could reach this property. The judgment obtained on September 17, 2013 was against the Debtor only. The only debt listed on Debtor's schedules which could have been incurred jointly during the marriage is a $1566 claim of a credit card company where the account was opened in May, 2011 and last active in May, 2014, well after the separation and the decree. However, there was no evidence that Crystal was liable on this debt.

As of the date of the transfers, these six properties would have been "property of the estate" but would have been exempt from recovery by the trustee and from distribution to creditors of the Debtor's bankruptcy estate as entireties property. The transfers on these 6 properties cannot be avoided.

### *Reasonably Equivalent Value*

The one parcel held by the Debtor individually and the two remainder properties in which Harold reserved a life estate are more problematic because, as of the date of the transfers, they were not entireties property. The question is whether the Debtor received "reasonably equivalent value" from Crystal in exchange for the transfers.

Whether a transfer was made for reasonably equivalent value is a question of fact and is to be determined as of the date of the transfer. *In re O'Neill*, 550 B.R. 482, 509 (Bankr. D. N. D. 2016); *In re Knight*, 473 B.R. 847, 851 (Bankr. N. D. Ga. 2012). There is no precise mathematical formula involved in determining reasonably equivalent value; rather it is a "common sense" inquiry that considers the circumstances of each case. *In re McKenzie*, 2014 WL 1025025 at *6 (No. 11-1116, Bankr. E. D. Tenn. March 14, 2014). Whether the Debtor received reasonably equivalent value logically begins

---

[2] According to the warranty deeds placed in evidence (Defendant's exhibits A through F) the properties were conveyed to Crystal and Debtor as either "husband and wife" or as "tenants by the entireties". Property conveyed to "husband and wife" is understood as held as tenants by the entireties unless a contrary intent is unequivocally stated in the deed. *LeRoy v. Wood,* 113 Ind. App. 397, 47 N.E.2d 604, 605 (Ind. Ct. App. 1943). There was no such contrary statement in the deeds.

7

with a comparison of the value of the property transferred with the value of that received in exchange for the transfer. *In re Neal*, 541 F. Appx. 609, 611 (6th Cir. 2013). The exchange need not be "dollar for dollar" or an exact equivalence. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997); *In re Carbaat*, 357 B.R. 553, 560 (Bankr. N. D. Cal. 2006); *Knight* at 851. Reasonably equivalent value can be in the form of a direct or an indirect economic benefit, but the value of the indirect benefit has to be tangible. *In re Dayton Title Agency, Inc.*, 292 B.R. 857, 874-75 (Bankr. S. D. Ohio 2003); *O'Neill, supra* at 511. The elimination of an antecedent debt either alone or with the promise to indemnify or hold the debtor harmless can constitute reasonably equivalent value. *In re Lopez*, 2003 WL 21976631 at *4 (No. 01-21082, 02-2164 Bankr. W.D.N.Y. August 13, 2003); *McKenzie, supra* at *6. Indirect non economic intangible benefits, such as preservation of a family relationship, are not sufficient to constitute reasonably equivalent value. *In re Wierzbicki*, 830 F.3d 683, 689 (7th Cir. 2016); *In re Erlewine*, 349 F.3d 205, 212 (5th Cir. 2003). The ultimate focus is on the net effect the transfer had on the debtor's bankruptcy estate, and specifically, on the funds available to the unsecured creditors. *In re Fordu*, 201 F.3d 693, 707 (6th Cir. 1999); *Neal*, at 611-12. As long as creditors are no worse off as a result of the transfer, no fraudulent transfer has occurred. *Neal*, at 612; *McKenzie, supra* *6. The trustee bears the burden of proving that the transfer was made for less than reasonably equivalent value. *In re Kimmell*, 480 B.R. 876, 889 (Bankr. N. D. Ill. 2012).

   The starting point would be to compare the value of these three properties and compare that value to what Crystal gave the Debtor in exchange for them. The trustee introduced no evidence whatsoever of the values of these, or any other, properties. The properties were not listed in either the Debtor's 2014 or 2015 bankruptcy schedules, as they had been transferred by then. There is Crystal's tentative testimony that, to her knowledge, there were no mortgages on the two remainder interest properties when they were transferred to her because, had there been, she surmised she would have heard from the mortgage company. But, since Harold held the life estate in two of the properties and Crystal was not on any mortgage note, there is no inference to be made from Crystal not hearing from a mortgage company. However, the evidence is undisputed that, even before the transfers were made and including up to and after the

8

date of the transfers, the parties had settled into a financial arrangement whereby Crystal paid all of the household expenses from her earnings and all of the expenses associated with the properties, including mortgages, taxes and insurance, and had no expectation of reimbursement or contribution from the Debtor as he was unemployed and had no money.  The trustee argues that since they were marital obligations, she was liable on them anyway, that she did not provide anything new that she was not already obligated to provide, and that "nothing changed" in terms of her liability.  However, the focus under §548(a)(1)(B) is the value the Debtor received.  See, *In re Hill*, 342 B.R. 183, 203 (Bankr. D. N. J. 2006) (inquiry under "good faith for value" defense under §548(c) is the value given by the transferee, but the inquiry under §548(a)(1)(B) is the value received by the Debtor).  What the Debtor and his eventual bankruptcy estate received was satisfaction of marital debt (for which he was not expected to reimburse Crystal) he otherwise would have been liable for.   The decree, entered six months later, merely formalized this arrangement and provided that Crystal pay the marital debt and hold the Debtor harmless.  The payment of the marital debt and the corresponding promise to hold the Debtor harmless provided reasonably equivalent value for the transfers:

> Even within the context of a divorce proceeding, where one spouse agrees to be solely responsible for a joint debt and to indemnify the other spouse in connection with that debt, that agreement, subject to valuation, can be an element of fair consideration for the transfer of the property.  In such a case, the agreement results in the contractual elimination by the promisor spouse of any right of contribution and reimbursement to the extent that such a right had not been previously waived or contracted away.  The agreement, if given full value, can be viewed as an asset of the transferor spouse that directly benefits at least some of the creditors that existed at the time of the transfer, or, alternatively, as the elimination of a contingent liability.  In either case, on a balance sheet basis, the result is that there is no diminution in the estate of the transferor spouse.

*Lopez*, *4.  The consideration given by Crystal under the informal financial arrangement was contemporaneous with the transfers.  At a minimum, Crystal paid $125,000 of Debtor's debts after the divorce decree was entered.  We have no evidence of what value, if any, the one property and the two remainder interests might have had.  Even if the trustee were to argue that the consideration (hold harmless) was not given at the

9

time of the transfer, it would not change the court's conclusion. The constructive fraud provisions of §538(a)(1)(B) do not require that the consideration the Debtor receives must be contemporaneous with the challenged transfer in order to constitute "reasonably equivalent value". *In re Kenrob Information Technology Solutions, Inc.*, 474 B.R. 799, 803 (Bankr. E. D. Va. 2012). The Court concludes that Crystal gave the Debtor reasonably equivalent value for the transfers and that the transfers cannot be avoided under §548(a)(1)(B). Judgment will be entered in favor of Defendant and against Plaintiff on Courts I and II.

## *CONCLUSIONS OF LAW AS TO COUNT III*

The Trustee in Count III seeks under §363(h) to sell the properties that are referred to in Counts I and II. A chapter 7 trustee may sell property co-owned by a non-Debtor under 11 U.S.C. §363(h). That section provides:

> The trustee may sell both the estate's interest ... and the interest of any co-owner in the property in which the Debtor had, at the time of the commencement of the [bankruptcy] case, an undivided interest as ... tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefits to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The trustee bears the burden of proof on all of the requirements under this section. *In re Labbee*, 550 B.R. 854, 857 (Bankr. D Idaho 2016). "It is axiomatic that the Trustee must at the outset establish that the proposed sale does in fact create a benefit to the estate." *In re Xiang Yong Gao*, 560 B.R. 50, 67 (Bankr. E. D. N. Y. 2016), *quoting In re DeVanzo*, No. 8–08–75665–REG, 2010 WL 1780038, at *2 (Bankr. E.D.N.Y. May 3, 2010). Such benefit may be established through proof that the estate's portion of the net

10

proceeds of the sale will exceed existing liens on the Debtor's interest in the property. *Id.*

The Court has found that the transfers to Crystal were not constructively fraudulent and the trustee cannot avoid them.   Five of the 6 parcels included in Count III were also the subject of Counts I and II, and thus, since the transfers of those 5 properties were not avoided, the trustee is not entitled to relief under Count III with respect to those parcels.

The remaining parcel sought to be sold in Count III is located at 2504 East State Road 244 Rushville.   There is no evidence of how the Debtor obtained an interest in this property or how the property is currently held, let alone the value of the property and whether it is encumbered.  The trustee has produced no evidence as to whether sale of this property will produce such a benefit for the estate.   As such, the trustee is not entitled to relief under Count III.  Judgment will be entered in favor of Defendant and against Plaintiff on Count III.

### CONCLUSIONS OF LAW AS TO COUNT IV

The Trustee in Counts IV and V seeks a denial of the Debtor's discharge under §§727(a)(4) and (a)(7).  Section 727(a)(4)(A) provides that the court shall grant the Debtor a discharge unless the Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.  The trustee must prove by a preponderance of the evidence that the false oath was made knowingly and fraudulently and that the false oath related to a matter involving the Debtor's business transactions or estate, or concerned the discovery of assets, business dealings, or the existence and disposition of his property. *Christofalos v. Kienlen*, No. 16-2913, 2017 WL 461089 at *5 (7th Cir. February 3, 2017); *In re Scott*, 227 B.R. 834, 841 (Bankr. S. D. Ind. 1998).  A showing of reckless disregard for the truth is sufficient to prove fraudulent intent. *Stamat v. Neary*, 635 F.3d 974, 978- 979 (7th Cir. 2011); *Farley v. Kempff*, 538 B.R. 431, 440 (N. D. Ill. 2015) aff'd, *In re Kempff,* No. 15-3200, -- F.3d. --, 2017 WL 396590 (7th Cir. January 30, 2017).  In order to prevail under this provision, a plaintiff must establish (1) that the Debtor made a statement under oath, (2) that such statement was

11

false, (3) that the Debtor knew the statement was false, (4) that the Debtor made the statement with fraudulent intent, and (5) that the statement related materially to the bankruptcy case. *Matter of Agnew,* 818 F.2d 1284 (7th Cir. 1987). A false statement on a Debtor's schedules or statement of financial affairs may constitute a false oath. *In re Senese*, 245 B.R. 565 (Bankr. N.D. Ill 2000). While the intent to defraud must be actual and not constructive, reckless disregard for the truth is regarded as the equivalent of fraud for purposes of this provision. *Matter of Yonikus,* 974 F.2d 901 (7th Cir. 1992). The requisite intent may be inferred from circumstantial evidence. *Village of San Jose v. McWilliams,* 284 F3d 785 (7th Cir. 2002), *In Re Sever,* 438 B.R. 612 (Bankr. C.D. Ill., 2010).

   Question 10 of the statement of financial affairs (SOFA) asks for a Debtor to list "all other property, other than property transferred in the ordinary course of the business or financial affairs of the Debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." This question covers all transfers made by the Debtor, other than ordinary course transfers. The Debtor's wholesale transfers of his interests in all of his properties was not in the ordinary course of his financial affairs. The information regarding the transfers certainly was material because, at a minimum, it involved the discovery of assets and the existence and disposition of his property. The transfers were made before Crystal filed for divorce and at least 6 months before the divorce decree was issued. The Debtor did not "lose" these properties "in the divorce", he voluntarily transferred them to Crystal. The trustee submitted as evidence a taped recording of the Debtor's testimony at his §341 meeting of creditors. The Debtor was asked whether he transferred anything of value within the last four years, other than what had been transferred in the divorce and he said no. He further testified that the properties he "lost in the divorce" had no equity. The Debtor left the trustee with the definite impression that it was the decree that triggered the transfers and that the property so transferred had no equity. The trustee has met his burden and has proven by a preponderance of the evidence that the Debtor made a false oath on this SOFA with reckless disregard for the truth. The Debtor's discharge will be denied under §727(a)(4).

## CONCLUSIONS OF LAW AS TO COUNT V

Section 727(a)(7) provides that the court shall grant the Debtor a discharge unless the Debtor has committed any act specified in §727(a)(2), (3), (4), (5) or (6) (the "predicate acts"), on or within one year before the date of the filing of the petition, or during the case, in connection with another bankruptcy case concerning an insider. The purpose of this section is:

> to prevent debtors who are involved in several bankruptcy proceedings from failing to cooperate in a proceeding in which their own discharge is not at issue, such as a corporate proceeding or a proceeding involving a partner or a relative and then, subsequently or simultaneously, obtain an individual discharge in another case. Section 727(a)(7) is a statutory provision which ties related cases together so that misconduct in one case by an individual may be chargeable against that individual in other related proceedings.

*Whiteside v. Siefkin*, 46 B.R. 479, 480-81 (N. D. Ill. 1985). The trustee here alleges that the Debtor's false oath in the prior case (failure to disclose transfers) can be a basis to deny him his discharge in the current case. The court concludes that §727(a)(7) simply is not applicable here. The predicates acts set out in this section must be committed in or in connection with another case "concerning an insider" and the Debtor is not an insider of himself. See, *In re Pearson*, 2014 WL 3051211 at *3 (Adv. No. 14-2020 Bankr. D. Utah July 3, 2014) ("[t]he statutory language does not admit the possibility that a debtor could be an insider of herself."). Had the Debtor been a corporate principal of a corporate Debtor and committed one of the predicate acts in the corporate case, his discharge could be denied in his individual case. But, the bad acts the Debtor committed in the prior case cannot serve as a basis to deny him his discharge in this case. See, *Whiteside*, at 481; ("Section 727(a)(7) is not intended to apply to all prior proceedings. If for example, both actions had been filed in the name of a single spouse Section 727(a)(7) would not apply"); *In re Carter*, 125 B.R. 631, 634 (Bankr. D. Utah 1991) (false oath made by a debtor in one case which is ultimately dismissed is not grounds for denial of the debtor's discharge in a subsequently filed case.) The court concludes that the Debtor's discharge cannot be denied under §727(a)(7).

13

The Court will issue the appropriate judgment regarding all counts of the Amended Complaint.

# # #